(C. D. 515)

H. A. Caesar & Co. et al. v. United States

United States Customs Court, Second Division

(Decided June 12, 1941)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiffs.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: The merchandise here under consideration consists of so-called umbrella cloth composed of cotton and artificial silk or rayon, but in chief value of cotton. It was assessed for duty by the collector as cotton cloth under the provisions of paragraphs 904 and 905 of the Tariff Act of 1930, at the appropriate rate or rates, according to average yarn number and condition, and it is claimed, among other things, by amendment of the protests or otherwise, that the merchandise is dutiable either at 40 per centum ad valorem under paragraph 907 of said act, as waterproof cloth in chief value of cotton or other vegetable fiber, or under said paragraph 907, as amended by the trade agreements with Belgium (T. D. 47600) and the United Kingdom (T. D. 49753), at the rate of 30 or 25 per centum ad valorem, respectively, according to the dates of entry or withdrawal from warehouse.

Upon request of counsel for the plaintiffs a commission was issued by this court to take the deposition of Dr. Emilio Sancassani, manager of Tessiture Seriche Bernasconi of Cernobbio, Italy, the manufacturers of certain of the cloth in question, for the purpose of determining its waterproof character, if any, on interrogatories propounded by the plaintiffs. Such commission has since been returned and introduced in evidence as exhibit 4–a, subject to certain objections on the part of the Government to certain of the interrogatories and answers thereto, on the ground that they call for conclusions to be passed on by the court. Ruling on the said objections was reserved by the court.

In view of the fact that the report of the Government analyst (exhibit 5) shows that the three samples of the umbrella cloth representa-

tive of all the merchandise covered by this commission are waterproof, and also for the reason that the said objections of counsel for the Government go more or less to the weight of the evidence, they are hereby overruled, with an exception to the Government.

According to the deposition of said Dr. Sancassani, he is familiar with the items of merchandise manufactured by his firm and shipped to H. A. Caesar & Co. and to Lustgarten Mills, Inc., New York, as per shipments, case numbers, etc., described and enumerated at the end of interrogatory No. 3; that he is familiar with the method of manufacturing these items; that the accompanying samples marked exhibits 1, 2, and 3, are truly representative of all the merchandise manufactured by his firm and contained in the cases noted in said interrogatory No. 3; that the merchandise was intended for use as waterproof cloth for umbrellas; that it was subjected to a waterproofing process in their factory, which he described as a "finishing bath treatment containing about 20 grams of acetate of alumina for colored cloth, and 20 grams of acetate of alumina together with 15 grams impregnon for the black and white colors." Deponent states further that the said process does not change the physical appearance of the cloth, but that the bath in which the cloth was immersed has impregnated the material used in weaving the cloth, so that a waterproofing effect is obtained.

Plaintiffs called Wm. A. Hedeman as a witness, who testified that he is employed by Reah Houser as an umbrella cloth salesman; that he personally sells the merchandise to his customers, and is familiar with the merchandise imported and sold by his firm; that he is familiar with merchandise like exhibits 1, 2, and 3, and that he has sold it to the umbrella trade for a number of years, and to no other. He stated that he was familiar with the requirements of the umbrella trade, and that it is absolutely necessary that all goods for such purpose be waterproofed, and that exhibits 1, 2, and 3 were sold to the umbrella trade in their imported condition.

A commission was also issued by this court to the American Consul at Lyon, France, to take the depositions of Joseph Vulliod, of Societe Anonyme Vulliod, Ancel, Lyon-Monplaisir, France, and Ettienne Colomb, Lyon, France, in the matter of protest 525942–G, etc., of H. A. Caesar & Co., on the same subject and issue. These protests have been consolidated with the other protests and the said commission has been received in evidence as collective exhibit 6, as counsel for the plaintiffs stated that there are some twenty-odd protests and entries that are covered by both commissions and that the court could not very well decide the two cases without having them consolidated. Upon motion of counsel for the plaintiffs this second commission, together with the said depositions of Vulliod and Colomb, were therefore received in evidence and marked collective exhibit 6.

The deposition of said Joseph Vulliod shows that he is Chairman of the Board of Directors of the Societe Anonyme Vulliod at Lyon, France, and that he is the same person who testified before the American Consul on February 8, 1938, in protest 844589–G of H. A. Caesar & Co., decided as C. D. 278, also relative to umbrella cloth processed in their factory and shipped to H. A. Caesar, New York. He states that he is familiar with the items of cloth in the invoices of Ettienne Colomb, Heer & Co., and Gessner & Co., to H. A. Caesar & Co., New York, the plaintiffs herein, as described and enumerated in the schedule following interrogatory No. 4; that all of said items of cloth were treated in his firm's factory, the process applied to the cloth differing according to the quality and the kind of dye required by their customers; that he is familiar with such treatment, and has been personally supervising the treatment in the factory for over 50 years; that the cloths as received by him from Ettienne Colomb, Heer & Co. and Gessner & Co. are in the raw condition; that they are then prepared by going through various treatments, as follows: The cloth is singed, scoured, dried, then dyed and waterproofed, according to a detailed schedule established in 1891, when the treatment of umbrella cloth was first worked out and perfected in their factory; that all the cloths are subjected to a waterproofing treatment in a finishing bath, which consists of running the fabrics through a solution of acetate of alumina of a specific concentration, with the result that the cloth becomes waterproof, i. e., that rain will no longer penetrate the cloth. Deponent testified further that the waterproofing treatment he has described is exactly the same as applied to the cloth in the case of said protest 844589–G about which he testified on February 8, 1938, and as referred to in interrogatory No. 3.

That protest had reference to so-called umbrella cloth manufactured by Heer & Co. of Thalwil, Switzerland, which was processed by the Vulliod firm in Lyon, France, in the manner stated in his present deposition and which was held by this court to be waterproof cloth under paragraph 907 of the tariff act and the trade agreement with Belgium (T. D. 47600). Upon motion of counsel for the plaintiffs the record in said case has therefore been incorporated as part of the record herein, it also appearing that the same Heer & Co. are the manufacturers of some of the umbrella cloth in the present instance.

According to the deposition of said Ettienne Colomb of Lyon, France, he is a manufacturer of umbrella cloth and is familiar with the goods he shipped to D. Reah Houser (H. A. Caesar & Co.), New York, and contained in the shipments and cases described and enumerated after interrogatory No. 3. He states that all of these fabrics

were manufactured by his firm in mills near Lyon, and were subsequently given out to other firms in Lyon to be dyed and processed; that he is personally familiar with the method of weaving, dyeing, and processing fabrics for umbrellas; and that all cloth manufactured by deponent and given out to be processed is exclusively intended for the preparation of fabrics for umbrellas. Deponent states further that all such cloth, including that shipped to the United States, is subjected to a waterproofing treatment by the Vulliod firm at Lyon-Monplaisir; that he has followed the various treatments to which the cloth is subjected by the firm of Vulliod, which are as follows: "The cloth is first singed on white-hot rollers; then it is washed in soap and hot water, rinsed in hot water, and afterwards in cold water, then dried. Subsequently the cloth is immersed in an aniline bath, then pressed between two hot rollers in order to squeeze the aniline out. The fabric then goes through an oxidizing chamber at high temperature. It comes out to be treated by special black dyeing solution. Then the fabric runs between hot rollers where it is dried. Afterwards it is given the required density by going through 40 ton presses, and then subjected to a waterproofing treatment by means of alumina acetate (acetate d'alumine in French). Lastly it is dried and cut."

The umbrella cloth on which claim is made herein and the protests and entries covering the same are described and enumerated in the appended schedule marked A and made a part of this decision.

We are satisfied from the record, testimony, depositions, and exhibits herein, that all of the umbrella cloth in question is wholly or in chief value of cotton, and is waterproof within the purview of paragraph 907 of the Tariff Act of 1930. The claim of the plaintiffs that the merchandise is dutiable as cotton waterproof cloth either at 40 per centum ad valorem under said paragraph 907, or under paragraph 907, as amended by the trade agreements with Belgium (T. D. 47600) and the United Kingdom (T. D. 49753), at the rate of 30 or 25 per centum ad valorem, respectively, according to the dates of entry or withdrawal from warehouse, is therefore sustained as to the merchandise contained in the cases and covered by the protests and entries described and enumerated in said appended schedule A. The protests are however overruled as to all other merchandise and on all other grounds.

Judgment will be rendered accordingly.